UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
BINTA SANYANG,

                         Plaintiff,

        -against-

TREMONT HELPS INC., TREMONT SOCIAL
GARDEN INC., MANHATTAN 125 LIMITED, and
DMITRIY MILOSLAVSKIY,

                      Defendants.

------------------------------------------------------------------- X

**COMPLAINT**

Plaintiff Binta Sanyang ("Plaintiff" or "Sanyang"), by her attorneys Pechman Law Group PLLC, complaining of Defendants Tremont Helps Inc., Tremont Social Garden Inc., (together, "Tremont Social Garden") Manhattan 125 Limited, (collectively "the Corporate Defendants") and Dmitriy Miloslavskiy, alleges:

### NATURE OF THE ACTION

1.      Binta Sanyang regularly worked up to fifty hours per workweek as a case manager at Tremont Social Garden, an Adult Day Care Center in the Bronx, but was paid by Defendants on a weekly salary basis that failed to compensate her for regular hours worked at the statutory minimum wage rate and for overtime pay for hours worked over forty per workweek. Defendants also failed to provide Sanyang with: (1) a wage notice at her time of hire and (2) accurate wage statements with each payment of wages.

2.      Defendants further subjected Sanyang to a discriminatory and hostile work environment and fired her in retaliation for raising her complaint of sex harassment.

3.      Sanyang brings this action to recover her unpaid minimum and overtime wages, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the New York Labor Law § 190 et seq. ("NYLL"), and the NYLL's Wage Theft

Prevention Act, NYLL § 195, 198 ("WTPA"). Sanyang further brings this action seeking monetary damages and other relief to redress Defendants' unlawful discrimination against her on the basis of her sex, sexual harassment, maintenance of a hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL")

## JURISDICTION

4.    This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and Title VII under 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred at Tremont Social Garden which is located and operated by Defendants in the Southern District of New York.

## PROCEDURAL REQUIREMENTS

6.    On May 6, 2026, Plaintiff received her Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC").

7.    Contemporaneously with this filing, a copy shall be remitted upon both the New York City Commission on Human Rights and the Corporation Counsel, as required by NYC Administrative Code 8-502.

## THE PARTIES

**Plaintiff Binta Sanyang**

8.    Binta Sanyang resides in Bronx County, New York.

9.    Defendants employed Sanyang as a case manager at Tremont Social Garden from approximately October 2024 through March 2025.

**Defendant Tremont Helps Inc.**

10.    Defendant Tremont Helps Inc. is a domestic not-for-profit corporation with headquarters at 563 East Tremont Avenue, Bronx, New York 10457, where it operates an Adult Day Care Center known as Tremont Social Garden.

11.    Tremont Helps Inc. provides functionally impaired individuals with socialization, supervision and monitoring, personal care, and nutrition in a protective setting.  These services range from transportation to medical appointments, to family counseling, games, and weekly trips.

12.    Tremont Helps Inc. provides adult day care services that compete in the marketplace with commercial enterprises offering similar services, and its activities are not confined to purely religious, educational, or charitable purposes exempt from enterprise coverage.

13.    Tremont Helps Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  Among other things, employees, including Sanyang, regularly used interstate communications tools, including telephone and mail, and coordinated with federal programs including Medicaid in the performance of their duties, thereby independently engaging in interstate commerce within the meaning of the FLSA.  Tremont Helps Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

14.    In the three years preceding the filing of this Complaint, Tremont Helps Inc. has had an annual gross volume of sales in excess of $500,000.

**Defendant Tremont Social Garden Inc.**

15.    Defendant Tremont Social Garden Inc. is a domestic not-for-profit corporation with a principal place of business in 51 East 125th Street, New York, New York 10035.

16.    Tremont Social Garden Inc. is an entity owned and controlled by Defendant Dmitriy Miloslavskiy that operates in conjunction with Tremont Helps Inc. and Manhattan 125 Limited in the operation of the Tremont Social Garden Adult Day Care Center.

17.    Tremont Social Garden Inc. provides adult day care services that compete in the marketplace with commercial enterprises offering similar services, and its activities are not confined to purely religious, educational, or charitable purposes exempt from enterprise coverage.

18.    Tremont Social Garden Inc. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  Among other things, employees, including Sanyang, regularly used interstate communications tools, including telephone and mail, and coordinated with federal programs including Medicaid in the performance of their duties, thereby independently engaging in interstate commerce within the meaning of the FLSA.  Tremont Social Garden Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

19.    In the three years preceding the filing of this Complaint, Tremont Social Garden Inc. has had an annual gross volume of sales in excess of $500,000.

**Defendant Manhattan 125 Limited**

20.    Defendant Manhattan 125 Limited is a New York corporation with a service of process location at 437 West 125 Street, New York, NY 10027.

4

21.    Defendant Manhattan 125 Limited is a staffing company that is owned and operated by Defendant Dmitriy Miloslavskiy.

22.    Throughout Sanyang's employment, Miloslavskiy incorrectly categorized Sanyang as an independent contractor for Manhattan 125 Limited.

23.    Manhattan 125 Limited is an "enterprise engaged in commerce" within the meaning of the FLSA.

24.    Manhattan 125 Limited has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

25.    In the three years preceding the filing of this Complaint, Manhattan 125 Limited has had an annual gross volume of sales in excess of $500,000.

**Defendant Dmitriy Miloslavskiy**

26.    Upon information and belief, Defendant Miloslavskiy is an owner and principal of Tremont Helps Inc., Tremont Social Garden Inc., and Manhattan 125 Limited.

27.    Throughout Sanyang's employment, Miloslavskiy held power and authority over personnel decisions at Tremont Social Garden, including the power to discipline employees, hire and fire employees, set employee schedules, set employee wage rates, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

28.    Throughout Sanyang's employment, Miloslavskiy was regularly present at Tremont Social Garden directing the work duties of employees.

29.    Miloslavskiy hired Sanyang.

30.    Miloslavskiy assigned Sanyang work and supervised her directly at least three days per week.

31. Miloslavskiy set Sanyang's schedule and would contact her directly if there was a schedule change.

32. Miloslavskiy set Sanyang's wage rate.

33. Miloslavskiy told Sanyang she was an independent contractor and would be paid on a salary basis.

34. When Sanyang asked about being paid as an independent contractor, Miloslavskiy told her that she could also request to be paid as a W2.

35. Miloslavskiy terminated Sanyang.

36. Miloslavskiy exercised sufficient control over Tremont Social Garden's operations and Sanyang's employment to be considered Sanyang's employer under the FLSA, Title VII, NYLL, NYSHRL, and NYCHRL.

**The Corporate Defendants Are Joint Employers**

37. Defendants Tremont Helps Inc., Tremont Social Garden Inc., and Manhattan 125 Limited (collectively, the "Corporate Defendants") operated as joint employers and as an integrated enterprise that, individually and collectively, employed Sanyang throughout her employment.

38. The Corporate Defendants are all owned and controlled by a single individual, Dmitriy Miloslavskiy, who exercised unified control over the hiring, firing, scheduling, supervision, and compensation of Sanyang and other workers at Tremont Social Garden.

39. During Sanyang's employment, the Corporate Defendants exchanged, shared, and interchangeably exerted control over Sanyang. Sanyang performed her work at Tremont Social Garden and reported to management there but was paid via direct deposit by Tremont Helps Inc.

40.     Defendants have claimed that Sanyang was an independent contractor for Manhattan 125 Limited which reflects the Corporate Defendants' deliberate use of multiple overlapping corporate entities to obscure their employment obligations and avoid liability for wages and other statutory protections.

41.     The Corporate Defendants share common ownership, common management, common premises, and a common business purpose: the operation of Tremont Social Garden as an Adult Day Care Center.

42.     The Corporate Defendants jointly held and exercised the power to control the terms and conditions of Sanyang's employment, including the power to hire, fire, discipline, set schedules, set wage rates, and retain time and wage records.

43.     The Corporate Defendants are joint employers of Sanyang within the meaning of the FLSA and the NYLL and are each individually and jointly liable for all wage, discrimination, and retaliation violations alleged herein.

## FACTUAL ALLEGATIONS

**Hours Worked and Pay Received**

44.     Sanyang worked as a case manager throughout her employment with Defendants.

45.     As a case manager, Sanyang was responsible for a case load of twenty-four "members," meaning clients who pay for services at Tremont Social.  Sanyang was required to provide a minimum of five "core services" for each member a day, which involved her performing a service for their quality of life, such as scheduling medical appointments, accompanying members to appointments with other social services such as HRA and NYCHA, calling members' insurances for any health related issues, and addressing other issues as they arose.

46.    Throughout her employment, Sanyang regularly worked from 8:00 a.m. to 4:00, 5:00 or 6:00 p.m., Monday through Friday, for a total of forty to fifty hours per workweek.

47.    Throughout her employment, Defendants paid Sanyang a weekly salary of $750.00 for all hours worked per workweek, including hours over forty.

48.    Throughout Sanyang's employment, her regular hourly wage rate frequently fell below the New York State statutory minimum wage rate.

49.    Defendants failed to pay Sanyang overtime pay equal to at least one and one-half her regular hourly wage rate, which shall not be below the statutory minimum wage rate, for all hours worked over forty per workweek.

50.    Defendants did not provide Sanyang with a wage notice at her time of hire or when her wage rate changed.

51.    Throughout her employment, Defendants paid Sanyang's wages without accompanying wage statements accurately reflecting, *inter alia*, her hours worked, and hourly rates paid.

52.    Defendants' failure to issue compliant wage notices or wage statements directly contributed to the wage theft suffered by Sanyang, as the lack of accurate information regarding her total hours worked per workweek and entitlement to overtime wages at the legally required rate hindered her ability to track the amounts owed to her and challenge Defendants' unlawful wage payment practices sooner.

53.    Had Sanyang received a compliant wage notice and accurate and compliant weekly wage statements, she would have realized that she was being underpaid and would have acted sooner to ensure proper payment of wages.

54.    Sanyang was unaware that she was legally entitled to be paid one and a half times her regular rate for all hours over forty per workweek, which a wage notice and wage statements in compliance with labor law regulations would have clarified.

**Sex Discrimination and Retaliation**

55.    Approximately one month into Sanyang's hire, Curtis Aboetaka, Tremont Social Garden's Director of Operations and Sanyang's immediate supervisor, and Luis [last name unknown], Tremont Social Garden's security guard, began harassing Sanyang.

56.    In November 2024, Sanyang went to Aboetaka's office to drop off documents. When Sanyang entered the office, Aboetaka asked Sanyang if she was doing anything that weekend.  Sanyang said she was busy to avoid speaking with him. Aboetaka then asked Sanyang if she was dating or sleeping with anyone. Sanyang responded that she had a boyfriend.

57.    A few days later, Sanyang reported Aboetaka's behavior to Dmitry Miloslavskiy, Tremont Social Garden's CEO.  Miloslavskiy told Sanyang it was not a big deal and to ignore Aboetaka.

58.    In December 2024, Aboetaka asked Sanyang if she would be attending the company's holiday party.  Sanyang responded that she was unsure, and Aboetaka asked her if she was not going to attend because she was going to be on a date.

59.    On January 3, 2025, Sanyang went into Aboetaka's office to discuss a member who was experiencing issues.  Aboetaka again asked Sanyang if she was attending the company's party, and Sanyang again answered that she was unsure. Aboetaka then got up from his desk, grabbed Sanyang's face, and forcefully told Sanyang: "Stop spending time with your boyfriends when you acting like I can't do these things for you as well." Aboetaka also said: "Why is it that you always wanna spend time with these young boys but you never wanna spend time with me?" Sanyang out of fear, responded

9

that she didn't like gatherings with co-workers. Aboetaka called Sanyang a liar and pushed her face to the side.

60. On approximately January 22, 2025, Sanyang reported Aboetaka's harassment to Miloslavskiy, who again dismissed her claims and did not conduct an investigation.

61. On February 14, 2025, Sanyang brought food for the employees in the office and prepared to distribute the food in the kitchen. While Sanyang was washing her hands to leave the kitchen, Aboetaka stood right next to Sanyang and breathed on her. Sanyang asked him to move, and he did not. Aboetaka then grabbed the zipper on the front of Sanyang's dress and pulled the zipper down. Aboetaka told Sanyang: "You're wasting your time with these little boys. You need a real man." Then said, "let me show you something" and put his hand in Sanyang's dress, above her breasts. Sanyang pulled away and said: "What the fuck Curtis!" Sanyang immediately exited the kitchen, went into the bathroom, and called her sister in tears to tell her what had occurred.

62. Luis made comments to Sanyang about her body several times a week. He told her she looked good and would stick his tongue out at Sanyang and say:"let me lick it." When Sanyang was close to leaving work, Luis would frequently tell her "if you have thirty minutes left, you should let me rock your life for thirty minutes."

63. Sanyang reported Luis's harassment to Miloslavskiy several times throughout November and December 2024 and in January 2025. Every time Sanyang reported the harassment to Miloslavskiy, he told her that Luis was joking around and failed to conduct an investigation.

64. On February 21, 2025, while Sanyang was on the elevator with her co-worker Jessica, Luis walked in with a trolly with materials. Sanyang asked Luis what the materials were for, and he told her to "shut the fuck up." Luis then told Sanyang that if

10

she kept talking, he would stick his dick inside her mouth and make her swallow it. Sanyang went to look for Miloslavskiy to inform him what had occurred, but he was not in his office. Sanyang decided to grab her things from her office and leave.

65.     While she was leaving work, Aboetaka asked Sanyang about the incident with Luis, and told her: "I would always make sure you are protected." Sanyang said she had a horrible migraine and wanted to leave. Aboetaka then told Sanyang that he had "conducted research on migraines and found that an orgasm can help relieve the pain." He continued by saying that Sanyang should let him "pound it [the migraine]" out of her. He also told Sanyang to go home and do her research on migraines and orgasms, and to come back and show him what she found.

66.     In February 2025, Sanyang's migraines began to increase due to the harassment she was experiencing at Tremont Social Garden and she took several sick days.

67.     During the first week of March 2025, Miloslavskiy told Sanyang he needed her to put in more work hours, despite the harassment she had reported to him and the migraines she was suffering due to the harassment.

68.     Miloslavskiy terminated Sanyang a few days later in retaliation for her complaints, claiming that she was unable to commit to the hours he needed.

## FIRST CLAIM
### (NYLL – Unpaid Minimum Wages)

69.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

70.     Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations and employed Plaintiff.

11

71. The NYLL and its supporting regulations require that employers pay employees at least the minimum wage for each hour worked up to forty per workweek.

72. Defendants failed to pay Plaintiff the minimum wages to which she was entitled under the NYLL.

73. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum hourly wages.

74. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover her unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## SECOND CLAIM
### (FLSA – Unpaid Overtime Wages)

75. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

76. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff.

77. Defendants were required to pay Plaintiff one and one-half (1½) times her regular hourly rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

78. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the FLSA.

79. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff the proper overtime wage rate.

80. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

12

81.     As a result of Defendants' violations of the FLSA, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### THIRD CLAIM
### (NYLL – Unpaid Overtime Wages)

82.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

83.     Under the NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiff one and one-half (1½) times her regular rate of pay, which shall not be less than the minimum wage rate, for all hours worked over forty per workweek.

84.     Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the NYLL and its supporting regulations.

85.     Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiff overtime wages.

86.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### FOURTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

87.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

88.     The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

89.     In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff at the time of hiring, or whenever her rate(s) of pay changed, with a wage notice containing the

13

rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

90. As a result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

## FIFTH CLAIM
### (NYLL WTPA – Failure to Provide Accurate Wage Statements)

91. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

92. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

93. Defendants failed to furnish Plaintiff, with each payment of wages, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

94. As a result of Defendants' violations of NYLL § 195(3), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## SIXTH CLAIM
### (Title VII – Sex Discrimination and Hostile Work Environment)

95.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

96.     Defendants discriminated against Plaintiff on the basis of her sex (female) in violation of Title VII by creating a sexually hostile work environment and subjecting Plaintiff to unlawful harassment on the basis of her sex.

97.     As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer emotional distress, including embarrassment, humiliation, stress, anxiety and mental anguish.

98.     As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm.

99.     Defendants' unlawful discriminatory actions in violation of Title VII were intentional or done with reckless indifference to Plaintiff's rights.

100.    As a result of Defendants' unlawful discriminatory conduct, Plaintiff is entitled to all remedies and relief afforded by Title VII, including but not limited to declaratory and injunctive relief, compensatory damages for emotional distress, humiliation, mental anguish, pain and suffering, and physical injury, punitive damages, and attorneys' fees and costs.

## SEVENTH CLAIM
### (NYSHRL – Sex Discrimination and Hostile Work Environment)

101.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

102.    At all relevant times, Defendants were Plaintiff's employer as defined by the NYSHRL, N.Y. Exec. Law § 292(5).

15

103.   Defendants discriminated against Plaintiff on the basis of her sex (female) in violation of NYSHRL by creating a sexually hostile work environment and subjecting Plaintiff to unlawful harassment on the basis of her sex.

104.   Plaintiff was regularly subjected to sexual harassment while working for Defendants.

105.   Plaintiff's supervisors were aware of the discrimination and harassment and took no action.

106.   As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering.

107.   As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

108.   Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL or were done with reckless disregard for Plaintiff's rights.

109.   As a result of Defendants' unlawful discriminatory conduct, Plaintiff is entitled to all remedies and relief afforded by the NYSHRL, including but not limited to declaratory and injunctive relief, monetary damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

## EIGHTH CLAIM
### (NYCHRL – Sex Discrimination)

110. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

111. At all relevant times, Defendants were Plaintiff's employer as defined by the NYCHRL, N.Y.C. Admin. Code § 8-102(b).

112. Defendants discriminated against Plaintiff on the basis of her sex (female) in violation of NYCHRL by creating a sexually hostile work environment and subjecting Plaintiff to unlawful harassment on the basis of her sex.

113. Plaintiff was regularly subjected to sexual harassment while working for Defendants.

114. Plaintiff's supervisors were aware of the discrimination and harassment and took no action.

115. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering.

116. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

117. Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL or were done with reckless disregard for Plaintiff's rights.

118.    As a result of Defendants' unlawful discriminatory conduct, Plaintiff is entitled to all remedies and relief afforded by the NYCHRL, including but not limited to declaratory and injunctive relief, monetary damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

### NINTH CLAIM
### (NYSHRL – Retaliation)

119.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

120.    Plaintiff is protected under the NYSHRL from retaliation based on sex, gender identity, and opposition to discriminatory practices.

121.    At all relevant times, Defendants were Plaintiff's employer as defined by the NYSHRL, N.Y. Exec. Law § 292(5).

122.    As described herein, Defendants subjected Plaintiff to discriminatory treatment and discharged Plaintiff from employment with Defendants because she complained of the discriminatory treatment.

123.    The individual Defendants are individually liable for retaliation under the NYSHRL because they directly participated in or knowingly and maliciously aided and abetted the unlawful discriminatory action.

124.    As a direct and proximate result of Defendants' unlawful and willful retaliation in violation of the NYSHRL, Plaintiff has suffered monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits.

125.    As a direct and proximate result of Defendants' unlawful and willful retaliation in violation of the NYSHRL, Plaintiff has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation,

embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of monetary damages.

126.    Defendants' unlawful retaliation constitutes malicious, willful, and wanton violations of the NYSHRL for which Plaintiff is entitled to an award of compensatory and punitive damages.

## TENTH CLAIM
### (NYCHRL – Retaliation)

127.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

128.    Plaintiff is protected under the NYCHRL from discrimination based on sex, gender identity, and opposition to discriminatory practices.

129.    At all relevant times, Defendants were Plaintiff's employer as defined by the NYCHRL § 8-102(b).

130.    As described herein, Defendants subjected Plaintiff to discriminatory treatment and discharged Plaintiff from employment with Defendants because of her opposition to discriminatory practices.

131.    The individual Defendants are individually liable for retaliation under the NYCHRL because they directly participated in or knowingly and maliciously aided and abetted the unlawful discriminatory action.

132.    As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits.

133.    As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation,

embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of monetary damages.

134.    Defendants' unlawful discriminatory conduct constitutes malicious, willful, and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of compensatory and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    declare that Defendants violated the minimum wage provisions of the NYLL and supporting regulations;

b.    declare that Defendants violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

c.    declare that Defendants violated the wage notice and wage statement provisions of the NYLL's WTPA;

d.    declare that Defendants' violations of the FLSA and the NYLL were willful;

e.    enjoin and permanently restrain Defendants from further violations of the FLSA and NYLL;

f.    award Plaintiff damages for unpaid minimum and overtime wages;

g.    award Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due pursuant to the FLSA and NYLL;

h.    award Plaintiff statutory damages as result of Defendants' failure to furnish Plaintiff with wage notices and accurate wage statements as required by the NYLL's WTPA;

i.    declare that Defendants engaged in unlawful discrimination in violation of Title VII, the NYSHRL and NYCHRL;

20

j.      award Plaintiff damages under Title VII, the NYSHRL and NYCHRL, including monetary/economic damages, compensatory damages, emotional distress damages, and punitive damages;

k.      award Plaintiff pre- and post-judgment interest;

l.      award Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA, NYLL, Title VII, the NYSHRL, and the NYCHRL; and

m.      award such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated:  New York, New York
        July 23, 2026

By: _____
        Louis Pechman
        Camille A. Sanchez
        PECHMAN LAW GROUP PLLC
        488 Madison Avenue - 17th Floor
        New York, New York 10022
        (212) 583-9500
        pechman@pechmanlaw.com
        sanchez@pechmanlaw.com
        *Attorneys for Plaintiff*

21